KEITH WOOD, a Disabled Person, by and through his Coguardians and Next Friends, Nancy Harrold *et al.*, Plaintiff-Appellant, v. THE VILLAGE OF GRAYSLAKE *et al.*, Defendants-Appellees (Gayle Kostycz, Defendant).

Second District   No. 2—91—0966

Opinion filed May 20, 1992.

Thomas J. Tyrrell, Jeffrey D. Javors, and Melissa L. Granholm, all of Tyrrell, Etchingham & Associates, of Chicago, for appellant.

Dennis J. Cotter, Glen E. Amundsen, and Mary T. Nagel, all of Querrey & Harrow, Ltd., of Waukegan, and Vincent C. Cipolla, of Kurnik, Cipolla, Stephenson & Barasha, Ltd., of Arlington Heights, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

Keith C. Wood, plaintiff, a disabled person, by and through his co-guardians and next friends Nancy Harrold and Ronald C. Wood, appeals from an order dismissing his third amended complaint against the Village of Grayslake (the Village), the County of Lake, and the Highway Department of County of Lake, an agent of the County of Lake (hereinafter collectively referred to as the County), defendants. For the following reasons, we affirm.

Route 83 runs in a northwesterly/southeasterly direction and intersects with Lake Street, a north/south road, at an angle in the County of Lake. On September 20, 1988, at approximately 10 p.m., Keith Wood was operating his motorcycle on Route 83 in a northwesterly direction near its intersection with Lake Street. At the same time, Gayle Kostycz was travelling north on Lake Street. Wood's motorcycle collided with a vehicle driven by Kostycz at this intersection, and Wood suffered permanent and disabling injuries. At the time of the collision, the intersection was controlled by stop signs on Lake Street for northbound and southbound traffic. Motorists travelling on Route 83 were not subject to any traffic control devices and were not required to stop.

Plaintiff's third amended complaint alleged that the Illinois Highway Code (Ill. Rev. Stat. 1987, ch. 121, par. 1—101 *et seq.*), the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—304), and a

maintenance agreement between the County of Lake and the State of Illinois imposed the following duties on the Village and the County:

> To exercise ordinary care to inspect, control, regulate and maintain the public streets and roads, within and without its jurisdiction, in good repair and in a reasonably safe manner, and to provide, inspect, control and maintain adequate traffic signs, markings and devices, warning of dangers to motorists approaching the intersections of Route 83 and Lake Street and to provide adequate traffic control devices to regulate, guide or warn traffic of the unusual nature of the intersection which endangered the safe movement of traffic, said conditions not being reasonably apparent to or anticipated by a person in the exercise of due care and, further, to warn motorists of hazards adjacent to the roadway and to remove public nuisances adjacent to the roadway.

In separate counts, the complaint alleged that the Village negligently and/or intentionally or recklessly committed the following acts and omissions:

> (1) Failed to provide sufficient traffic control signs, markings and devices at or near the intersection to provide a warning to northbound traffic on Lake Street of the presence of an intersecting northwesterly/southwesterly roadway (namely Route 83);

> (2) failed to improve the existing traffic control devices by erecting signs or devices warning that cross-traffic on Route 83 does not stop and that the intersection is dangerous;

> (3) failed to clear obstructions at the southeast corner of the intersection, namely an advertising sign, cement posts, and illegally parked automobiles, which hindered the view of oncoming traffic to motorists;

> (4) failed to erect and maintain signs, markings or devices warning motorists that cross-traffic on Route 83 had an open intersection and was not required to stop or reduce speed;

> (5) failed to reduce the designated speed limit on Route 83;

> (6) failed to provide, erect or install stop signs, markings or other traffic control signals at or near all corners of the intersection to fully control the intersection;

> (7) failed to maintain the crossroad indication sign on Route 83 located 650 feet southeast of its intersection with Lake Street at the time of the collision;

> (8) failed to erect a sign on Lake Street warning motorists travelling on Lake Street approaching Route 83 that the cross-

road indication sign 650 feet southeast of the intersection on Route 83 was not present and had been missing for an appreciable length of time; and

(9) otherwise failed to adequately control, maintain, inspect and regulate said highways.

Next, plaintiff alleged that the County of Lake and the Highway Department negligently and/or intentionally or recklessly committed the following acts and omissions:

(1) Failed to provide sufficient traffic control signs, markings and devices at or near the intersection to provide a warning to northwesterly bound traffic on Route 83 of the presence of an intersecting north/south roadway (namely Lake Street);

(2) failed to improve the existing traffic control devices by erecting signs or devices warning that the approaching intersection is dangerous, and implement other protective measures for traffic, including placing stop signs or signals to control traffic in all directions;

(3) failed to clear obstructions at the southeast corner of the intersection, namely an advertising sign, cement posts, and illegally parked automobiles, which hindered the view of oncoming traffic to motorists;

(4) failed to erect and maintain signs, markings or devices warning motorists that they were approaching a dangerous intersection;

(5) failed to reduce the designated speed limit on Route 83;

(6) failed to erect and maintain signs, markings or devices warning motorists that the aforementioned obstructions at the southeast corner of the intersection created an unanticipated and unsafe condition;

(7) failed to maintain the crossroad indication sign on Route 83 located 650 feet southeast of its intersection with Lake Street at the time of the collision;

(8) failed to erect a sign on Lake Street warning motorists travelling on Lake Street approaching Route 83 that the crossroad indication sign 650 feet southeast of the intersection on Route 83 was not present and had been missing for an appreciable length of time; and

(9) otherwise failed to adequately control, maintain, inspect and regulate said highways.

The complaint supported its wilful and wanton allegations by attaching reports of collisions occurring at the intersection in the prior four years. Knowledge of the hazardous nature of the intersection was also

asserted by virtue of a safety investigation of the intersection commissioned by the Village.

In response, the Village moved to dismiss the third amended complaint pursuant to section 2—615 of the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) on the basis that the third amended complaint essentially repleaded the allegations previously presented in the second amended complaint which was dismissed pursuant to a prior section 2—615 motion. The Village also maintained its position that it does not have a duty to maintain the crossroad sign because it is located on a State highway under the exclusive jurisdiction of the Department of Transportation.

In turn, the County moved to dismiss pursuant to section 2—619(a)(9) of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9)). The County asserted that it has no jurisdiction over the roadways in question and therefore owed no duty to plaintiff to control or maintain the intersection. The County further asserted that, even if it did have a such a duty, the intersection was not the proximate cause of the collision and also that the allegations of wilful and wanton conduct were insufficient because the County had no actual or constructive notice of the alleged dangerous nature of the intersection. After a hearing, the court entered an order dismissing plaintiff's third amended complaint against the Village and the County with prejudice pursuant to section 2—619(a)(9) of the Code.

When the grounds for a dismissal do not appear on the face of the pleadings, but are established by affidavits or depositions, a defendant may contest the complaint through either a motion to dismiss pursuant to section 2—619 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) or a motion for summary judgment (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005). (*Quinton v. Kuffer* (1991), 221 Ill. App. 3d 466, 469.) The purpose of a section 2—619 motion is to dispose of issues of law or easily proved issues of fact. (*Brown v. Chicago Park District* (1991), 218 Ill. App. 3d 612, 615.) A dismissal on the pleadings is warranted only if it is clearly apparent that no set of facts can be proved which would entitle the plaintiff to recover. (*Gouge v. Central Illinois Public Service Co.* (1991), 144 Ill. 2d 535, 542; *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 505.) In reviewing the propriety of a section 2—619 dismissal, we must assume all well-pleaded facts in the plaintiff's complaint as true. However, conclusions of law or fact unsupported by specific factual allegations may be disregarded. (*Nagy v. Beckley* (1991), 218 Ill. App. 3d 875, 878.) In this case, the trial court dismissed plaintiff's third amended complaint without specifically noting its rationale. However, a section 2—619

dismissal may be affirmed on any grounds supported by the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct. *Beckman v. Freeman United Coal Mining Co.* (1988), 123 Ill. 2d 281, 286.

■ To state a cause of action for either simple or wilful and wanton negligence, a plaintiff must allege facts sufficient to show defendant had a duty to maintain the roadway and intersection in question, a breach of such duty, and an injury proximately resulting from the breach. (*Marshall v. City of Centralia* (1991), 143 Ill. 2d 1, 6.) The issue of whether the defendant owed plaintiff a duty of care is a question of law to be determined by the trial court which is properly asserted in a motion to dismiss pursuant to section 2—619. (*Brown v. Chicago Park District* (1991), 218 Ill. App. 3d 612, 616.) Resolution of the issue depends on whether the parties stood in such a relationship to one another that the law imposes an obligation on the defendant to act reasonably for the protection of plaintiff. (*Gouge*, 144 Ill. 2d at 542.) The court must also weigh the foreseeability that defendant's conduct will result in injury and the likelihood of an injury occurring against the burden to defendant of imposing a duty and the consequences of imposing this burden. *Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 47.

In support of its section 2—619 dismissal, the County submitted the affidavit of Martin Buehler, director of transportation and county superintendent of highways for the Lake County division of transportation. Buehler stated that, on the date of the collision the intersection of Route 83 and Lake Street, including the stop sign on the southeast corner of the intersection, was under "the exclusive jurisdiction and control of the State of Illinois." Buehler's affidavit confirmed that the County entered into an agreement with the State of Illinois to maintain the intersection for a fee on the date in question. However, the County asserts that this agreement does not confer maintenance jurisdiction giving rise to any of the alleged duties within the meaning of the Illinois Vehicle Code. Ill. Rev. Stat. 1987, ch. 95½, par. 11—304.

■ Plaintiff filed a response to the County's motion to dismiss. In his objections, however, plaintiff does not deny the substance of Buehler's affidavit, nor has he filed a counteraffidavit. The failure to file a counteraffidavit does not entitle the movant to judgment *ipso facto*. However, where a party moving for dismissal pursuant to section 2—619 files supporting affidavits containing well-pleaded facts and the party opposing the motion files no counteraffidavits, the facts set forth in the movant's affidavits are accepted as true despite any

contrary assertions in the nonmovant's pleadings. (See *In re Marriage of Dowd* (1991), 214 Ill. App. 3d 156, 157; *Blankenship v. Dialist International Corp.* (1991), 209 Ill. App. 3d 920, 924.) If the opponent fails to controvert the proofs offered in support of the motion and the movant's showing of uncontradicted facts would entitle him to judgment as a matter of law, a dismissal pursuant to section 2—619 is proper. *Cf. Blankenship*, 209 Ill. App. 3d at 924.

■ Accordingly, we accept Buehler's uncontroverted statement that, on the date of the collision, the State of Illinois had exclusive jurisdiction and control of Route 83, including the portion from Washington Street (south of the intersection) to Rollins Road (north of the intersection) which includes the intersection of Route 83 and Lake Street, and Lake Street south of Route 83 to Washington Street. We must also accept as true Buehler's statement that the County entered into an agreement to maintain Lake Street from its intersection with Route 83 to Washington Street, which was in effect on the date of the collision.

On appeal, plaintiff contends that the court erred in dismissing the complaint because it contains sufficient factual allegations concerning defendants' duty, breach of duty and proximate cause for which defendants cannot claim immunity under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1987, ch. 85, par. 1—101 *et seq.*). In an effort to controvert the contents of Buehler's affidavit, plaintiff asserts that defendants owe a duty to maintain the intersection in a safe condition arising under common law, by statute, and pursuant to a maintenance agreement between the County and the State of Illinois. This duty is alleged to have been breached by failing to provide sufficient traffic control devices or warning signs, to improve existing traffic control devices, to clear obstructions, to reduce the speed limit on Route 83, and to maintain the sign on Route 83 warning of the intersection.

■ Focusing first on the maintenance agreement, our review of its specific language reveals that it obligates the County to maintain *Lake Street* from Route 83 to Renehan (Washington Street, south of the intersection) in a manner satisfactory to the Department of Transportation. However, plaintiff's third amended complaint is completely devoid of any allegations concerning defendants' duty to *maintain Lake Street*. Instead, plaintiff charges negligence by the County and the Village in failing to reduce the designated speed limit of *Route 83*, failing to maintain the crossroad indication sign located on *Route 83*, failing to clear obstructions located on the southeast corner of the intersection, and failing to *provide* traffic control devices. Because the

maintenance agreement relates solely to Lake Street, it does not create a duty to remedy any of the alleged hazards on Route 83.

■ Moreover, the County is not under a duty to maintain Route 83 by virtue of section 11—304 of the Illinois Vehicle Code, which provides as follows:

> "Local authorities and road district highway commissioners in their respective maintenance jurisdiction shall place and maintain such traffic-control devices upon highways under their maintenance jurisdiction as are required to indicate and carry out the provisions of this Chapter, and local traffic ordinances or to regulate, warn, or guide traffic." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—304.)

While this section imposes an obligation on local authorities to warn motorists of those hazards incident to the portion of a highway remaining under local maintenance jurisdiction (*Santelli v. City of Chicago* (1991), 222 Ill. App. 3d 862, 869), section 3—104 of the Tort Immunity Act immunizes a local public entity from any tort liability for failing to fulfill this duty. (*West v. Kirkham* (1992), 147 Ill. 2d 1, 14; *Fitt v. City of Mattoon* (1991), 215 Ill. App. 3d 472, 481.) However, a service agreement between a municipality and the State which obligates the municipality to repair and maintain streets under the jurisdiction and control of the State, for a fee, does not confer maintenance jurisdiction upon the locality within the meaning of section 11—304. (*Ross v. City of Chicago* (1988), 168 Ill. App. 3d 83, 91.) Consequently, section 11—304 does not create any duty on the part of the County pursuant to the maintenance agreement as to any of the allegations in plaintiff's third amended complaint. We also note that the Village owes no duty to plaintiff pursuant to the maintenance agreement, since the Village was not a party to the agreement.

In his response to the County's section 2—619 motion to dismiss, plaintiff also asserts that defendants owe a common-law duty to maintain roadways in a reasonably safe condition. However, both the Village of Grayslake and the County of Lake are within the definition of a "local public entity" of the Tort Immunity Act (Ill. Rev. Stat. 1987, ch. 85, par. 1—206), the purpose of which is "to protect local public entities and public employees from liability arising from the operation of government." (Ill. Rev. Stat. 1987, ch. 85, par. 1—101.1(a).) Section 3—104 of the Tort Immunity Act describes the immunity for failing to provide traffic signals and signs as follows:

> "Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield

right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs, overhead lights, traffic separating or restraining devices or barriers." (Ill. Rev. Stat. 1987, ch. 85, par. 3—104.)

It is clear that the Tort Immunity Act does not create any new liabilities for negligent acts or omissions which did not previously exist, but articulates the common-law duty to which the subsequently delineated immunities apply. (*Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 412.) However, the extent to which the language of section 3—104 describes or limits the common-law duty of a governmental unit to warn motorists of hazardous roadway conditions has been an unsettled issue in our courts.

In *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, our supreme court held that the city had a statutory obligation to warn of the hazard created by a traffic island which projected into the outer lane of an intersection under State control. The court found that the city's duty existed by virtue of an agreement between the city and State bestowing maintenance jurisdiction over the lane which would bring motorists in contact with the hazardous projection on the city. In *Dinges v. Gabardi* (1990), 202 Ill. App. 3d 732 (Geiger, J., dissenting), this court upheld the viability of *Janssen* and reversed the dismissal of the portion of plaintiff's complaint alleging negligence by the County of Kane in failing to maintain a stop sign and otherwise warn motorists of the dangerous condition of the intersection. It reasoned that the duty to warn stems from the duty to maintain public roadways in a reasonably safe condition and that the immunities available under section 3—104 of the Tort Immunity Act "[do] not apply where a particular sign is necessary to warn of a condition which endangers the safe movement of traffic." (*Dinges*, 202 Ill. App. 3d at 736-37, citing *Smith v. County of White* (1989), 191 Ill. App. 3d 569, 577.) In *Castorena v. Browning-Ferris Industries of Illinois* (1991), 217 Ill. App. 3d 328 (Geiger, J., specially concurring), however, this court reversed a directed verdict on the issue of the city's negligence in failing to warn of a hazardous condition. Although the *Castorena* court modified *Dinges* and held that a public entity is immune from liability for initially failing to provide signs warning of a dangerous condition, it found that the immunity no longer exists once the public entity has notice of the dangerous condition. *Castorena*, 217 Ill. App. 3d at 334.

Recently, our supreme court clarified the extent to which section 3—104 provides immunity for the "failure to initially provide regula-

tory traffic control devices." (Ill. Rev. Stat. 1987, ch. 85, par. 3—104.) In *West* (147 Ill. 2d at 6), plaintiff's complaint alleged negligence by the City of Urbana in failing to provide a left-turn arrow on a street where the collision occurred. The court rejected plaintiff's contention that the immunity described by section 3—104 will only attach if the municipality was without notice that the lack of the device created a dangerous condition. Instead, the court concluded that the legislative history and the language of section 3—104 evidence the clear intent "to enlarge the scope of section 3—104's immunity and to immunize *absolutely* the failure to initially provide a traffic control device, even where such failure might 'endanger the safe movement of traffic.' " (Emphasis in original.) *West*, 147 Ill. 2d at 8.

Further, the court overruled *Smith v. County of White* (1989), 191 Ill. App. 3d 569, to the extent it relied on section 3—104(b) of the Tort Immunity Act, which was deleted by an amendment to the statute in 1986, in holding that immunity cannot attach when the local public entity previously installs a sign at the intersection because the claim at issue is not based on the "initial" failure to provide. (*West*, 147 Ill. 2d at 11.) The court stated that this rationale "would effectively swallow the section's immunity entirely," because "the creative plaintiff, seeking to premise an action on the failure to provide a particular traffic device, could always circumvent section 3—104 by finding and pointing out some *other* traffic device that *was* provided." (Emphasis in original.) (*West*, 147 Ill. 2d at 10.) This rationale applies to plaintiff's allegation that defendants were negligent in failing to reduce the speed limit on Route 83. Although this language is not couched in terms of the initial failure to provide a speed limit sign, *West* makes clear that immunity under section 3—104 applies to the failure to provide a *specific* traffic control device, even if the alleged hazard already has a different type of signal or sign.

Further, the *West* court dispelled any confusion concerning the construction of section 3—104 with section 3—102 of the Tort Immunity Act. Section 3—102(a) codifies the common-law duty of a governmental unit to maintain its property in a safe condition as follows:

> "*Except as otherwise provided in this Article*, a local public entity has the duty to exercise ordinary care to *maintain* its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 85, par. 3—102(a).)

The *West* court held that the duty to provide is exclusively governed by section 3—104 because the underscored language exhibits an intent to expressly exclude the duty to *provide* from the general duty to *maintain*. (*West*, 147 Ill. 2d at 13.) *West*, therefore, holds that section 3—104 of the Tort Immunity Act absolutely immunizes a local public entity from failing to provide traffic control devices even if the governmental unit had notice of the hazardous condition of the roadway.

■ Thus, even if defendants owe a duty to maintain their property for the benefit of plaintiff, arising by operation of common law (codified in section 3—102), under contract (pursuant to the maintenance agreement), or by statute (Ill. Rev. Stat. 1987, ch. 95½, par. 11—304), our supreme court's analysis in *West* indicates that section 3—104 absolutely immunizes a local public entity from any liability arising out of the failure to *provide* a particular traffic control device, even if such failure was the proximate cause of plaintiff's injuries. Therefore, all allegations charging the Village and the County with both ordinary and wilful and wanton negligence in failing to provide, improve, erect, or install traffic control signs, markings, or devices were properly dismissed by the court.

The remaining allegations charge the Village and the County with both ordinary and wilful and wanton negligence in failing to remove obstructions from the southeast corner of the intersection and failing to maintain the crossroad indication sign on Route 83. Although Buehler's affidavit states that neither the Village nor the County had jurisdiction over the intersection and its surrounding area, plaintiff cites *Dinges* for the proposition that a governmental unit controlling a roadway owes a duty to warn motorists of hazards adjacent to the roadway even if the hazard itself is not within its control. As we previously noted, this was essentially the holding of our supreme court in *Janssen* (79 Ill. 2d at 444). However, *Janssen* and *Dinges* are overruled by our supreme court in *West*, to the extent they rely on section 3—104(b) of the Tort Immunity Act, which was deleted by an amendment to the statute in 1986. See *West*, 147 Ill. 2d at 11.

■ Assuming *arguendo* that both the Village and the County owe a duty to plaintiff arising under common law and its construction in *Janssen*, by statute, or pursuant to the maintenance agreement, neither the obstructions nor the absence of a crossroad indication sign on Route 83 was the proximate cause of the collision. Proximate cause is defined as the cause which produces the injury through a natural and continuous sequence of events unbroken by any effective intervening cause. (*Parsons v. Carbondale Township* (1991), 217 Ill. App. 3d 637, 647.) While proximate cause is ordinarily a question of fact, it can be a question of

law where reasonable persons could not differ as to the inferences to be drawn from disputed facts. (*Newsome v. Thompson* (1990), 202 Ill. App. 3d 1074, 1081.) To survive dismissal, the plaintiff must present some factual basis that arguably entitles him to recover. (*Gehrman v. Zajac* (1975), 34 Ill. App. 3d 164, 166.) If the negligence charged does nothing more than furnish a condition which made the injury possible, and that condition causes an injury by the subsequent, independent act of a third party, the creation of the condition is not the proximate cause of the injury. The subsequent independent act becomes the effective intervening cause which breaks the causal connection between the original wrong and the injury, and itself becomes the proximate or immediate cause. *Ball v. Waldo Township* (1990), 207 Ill. App. 3d 968, 973; *Newsome*, 202 Ill. App. 3d at 1081.

Immediately prior to the collision in the present case, plaintiff was travelling in a northwesterly direction on Route 83. Assuming plaintiff was not aware of the upcoming intersection with Lake Street due to the absence of the warning sign on Route 83 or because obstructions impaired his view, a stop sign on the southeast corner of Lake Street required Gayle Kostycz, the woman operating the vehicle which collided with plaintiff, to stop and yield to traffic on Route 83. Plaintiff's complaint lacks any allegations that defendants were negligent in failing to maintain this stop sign or that the obstructions impaired Kostycz' view of the stop sign on the date in question. Instead, the complaint makes the sweeping allegation that defendants were negligent in "fail[ing] to cause obstructions, including an advertising sign, cement posts and illegally parked automobiles, located at the southeast corner of the intersection adjacent to the highway hindering motorists view of oncoming traffic to be removed."

In its motion to dismiss, the County offered excerpts of Kostycz' deposition in an effort to show that no improvement to the intersection would have prevented the collision. Kostycz testified that on the date of the collision the weather conditions were clear and dry. She claims to have observed the stop sign by coming to a complete stop approximately three car lengths after the sign and looking both ways along Route 83 for approximately three seconds before proceeding into the intersection and colliding with plaintiff. She stated that her vision was *not* impaired by parked cars, sign posts, or any other obstructions.

As we have previously stated, plaintiff's complaint must allege a duty, a breach of duty, and an injury proximately resulting from the breach. (*Marshall*, 143 Ill. 2d at 6.) Where a plaintiff fails to establish an element of the cause of action through the pleadings, depositions, admissions, and affidavits filed, dismissal is proper. (*Cf. Parsons*, 217 Ill. App.

3d at 649.) Although we do not expect, nor does the law require, that plaintiff prove his case at the hearing on the County's motion to dismiss, he must present some facts to show that the absence of the sign on Route 83 and any obstructions which existed were the proximate cause of his injuries. *Cf. Gilberg v. Toys "R" Us, Inc.* (1984), 126 Ill. App. 3d 554, 558.

In this case, both the Village and County had a right to assume that Kostycz would not violate her statutory duty to yield the right-of-way to oncoming traffic on Route 83 and that she would check for oncoming traffic before proceeding into the intersection. Furthermore, Kostycz testified that she did observe the stop sign. Without any counterevidentiary support for plaintiff's allegations that the failure to maintain the sign on Route 83 and the failure to clear obstructions from the intersection somehow caused his injuries, his allegations are based on surmise and conjecture and fail to furnish a factual link between the collision and the conditions of the intersection sufficient to support the requirement of pleading proximate cause. Based on the pleadings and uncontroverted evidentiary facts before the court, we find that the absence of the sign or any obstructions at the intersection did nothing more than furnish a condition. Kostycz' actions were the type of subsequent, independent acts constituting an effective intervening cause which broke the chain of causation between the Village's and County's negligence, if any, and plaintiff's injury.

To summarize our holding, we determine, as a matter of law, that all allegations in plaintiff's third amended complaint were properly dismissed pursuant to section 3—104 of the Tort Immunity Act and its construction as articulated in *West v. Kirkham* (1992), 147 Ill. 2d 1, 14, with the exception of the allegations that the County and Village were negligent in failing to clear obstructions from the intersection and in failing to maintain the sign on Route 83 warning of the approaching intersection. Additionally, we determine, as a matter of law, that the remaining allegations were also properly dismissed because plaintiff failed to allege facts and present evidence which would support a finding that the failure to maintain the sign and clear obstructions was a proximate cause of plaintiff's injuries.

Accordingly, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

UNVERZAGT and WOODWARD, JJ., concur.